UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **CYNTHIA BUTLER DENLEY** | **CIVIL ACTION** |
| **VERSUS** | **No. 07-4015** |
| **HARTFORD INSURANCE COMPANY OF THE MIDWEST** | **Section "C" (5)** |

## ORDER AND REASONS[1]

Before the Court are the motions filed of defendant, Hartford Insurance Company of the Midwest ("Hartford") for summary judgment and to exclude the Elite Homes by Wirth ("Elite") report and the testimony of the Plaintiff's ("Denley") expert witnesses, Kevin Manale ("Manale") and Ronnie Wirth ("Wirth"), pursuant to Federal Rules of Evidence 702 and Federal Rule of Civil Procedure 37. Having considered the arguments of counsel, the record and the applicable law, the Court finds that the motion for summary judgment is GRANTED IN PART and DENIED IN PART. The motion to exclude experts and the expert report GRANTED IN PART and DENIED IN PART.

**I. BACKGROUND**

The Plaintiff, Denley, was living in her home in New Orleans East at the time of Hurricane Katrina in August of 2005. Her home, garage, and personal belongings sustained damage due to the storm, at least some from wind specifically. (Rec Doc 20-12; 29-5). Denley evacuated to Jennings, Louisiana and ultimately Shreveport, Louisiana. (Rec. Doc. 29-3, 2).

On November 19, 2005, the independent adjusting firm, Premier Catastrophe Services ("Premier"), sent Dale Sands ("Sands") to inspect Denley's premises. *Id*. Sands took photos of

---
[1] Samantha Kennedy, second year law student at Loyola University New Orleans, College of Law, assisted in the research and preparation of this Order.

damaged areas of the premises.  Hartford argues photographs of the roof show a power attic vent in place, which Hartford suggests went missing after the inspection, creating a hole in the roof. This hole, Hartford asserts, is both largely the cause of the damages that Denley now claims and the *basis* of Denley's argument for damages.  (Rec. Doc. 20-12, 2).  On November 26, 2005, Sands prepared an inspection report and its delivery date to Denley is in dispute.  Hartford insists the report was provided to the Plaintiff on December 2, 2005 and Denley argues she did not receive the report until May of 2008.  (Rec. Docs. 20-12, 2; 29-5 at 3; 29 at 2).  Sands report found $1038.25 in wind or wind-driven rain above the 6.5 foot flood line in Denley's house, amounting to damages that fall well below Denley's insurance deductible.  (Rec. Doc. 20-7, 13). Denley argues that the report is inaccurate because it lists the flood line of the house at 6.5 feet, where the photos depict a flood line at 4.5 feet.  (Rec. Doc. 29-5).  Furthermore, Denley argues that Sands did not photograph all of the damage, nor the undamaged areas, so as to record a comprehensive picture of the damaged property.  *Id*. at 2.  Denley hired Elite to inspect and prepare a damage estimate for her home in June 2007.  According to Denley, Manale and Wirth inspected the property together for Elite.  Manale and Wirth's report, the Elite report, found $55,005.00 in wind or wind-driven rain damage to the insured structures, above the 4.5 foot flood line.  (Rec. Doc. 29-3).

On August 7, 2007, the district court received Denley's petition for damages.  Denley is suing Hartford for wind and wind-driven rain damage, failure to pay insurance claim, breach of duty, and breach of contract.  (Rec. Doc. 1-2).  Hartford sent Denley a Request for Admission on December 6, 2007.  (Rec. Doc 20-11).  The Request was not returned until March of 2008.  (Rec. Doc. 20-12).  In the meantime, on January 22, 2008, Denley's attorneys sent Hartford's attorneys

a letter listing all the damages under the policy and an estimate as determined by Manale.[2]  (Rec. Doc 29-3).  On May 20, 2008, Premier re-inspected the house and noted the missing power attic vent, a hole in the vent's place, windows that were open, and a rear door that was not secured well.  Hartford alleges that the unsecured door and open windows, along with a hole in the roof, allowed for high humidity levels, and presumably, that if the windows were shut, the door secure, and the power attic vent in place, the house would withstand humid air.  (Rec. Doc. 20-2, 10).

On June 10, 2008, Hartford filed a Motion *in limine*, to exclude the testimony of both Wirth and Manale and the Elite report.  (Rec. Doc. 21-2).  Hartford also filed a Motion for Summary Judgment on all of Denley's claims.  (Rec. Doc. 20).

**II. Defendant's Motion to Exclude Expert Witness**

Federal Rule 702 governs the admissibility of expert testimony and reports.  It states:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based on sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702.

Rule 702 was amended in 2000 to reflect the United States Supreme Court decision in *Daubert v. Merrell Dow Pharmaceuticals, Inc*., 509 U.S. 579 (1993) and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999).  The *Daubert* decision changed the criteria for the

---

[2] The letter also included damages for personal property, falling under Section I, Coverage C of the policy and Additional Living Expenses, falling under Section I Coverage D amounting to $64,180.50, for a total of $114,157.47 (minus the $4,240.00 deductible).  (Rec. Doc. 29-3, 2).

admissibility of expert testimony, charging trial courts to act as "gatekeepers" to ensure that proffered testimony is both relevant and reliable.  *Daubert*, 509 U.S. at 589.  In *Kumho Tire*, the Supreme Court held that the relevant and reliable standard announced in *Daubert* for scientific expert testimony applied to all types of expert testimony.  *Kumho Tire*, 526 U.S. at 147.

In *Daubert*, the Supreme Court created a two-prong test for trial judges to determine the admissibility of expert testimony.  To admit expert testimony, a court "must determine at the outset, pursuant to Rule 104(a), whether the expert is proposing to testify to: (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue." *Daubert*, 509 U.S. at 592.  Additionally, both prongs of the Daubert test must be satisfied before the proferred expert testimony may be admitted.  *Id*. at 595.  This analysis "entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts at issue." *Id*.  Thus, the first prong of *Daubert* focuses on whether the expert testimony is based on a reliable methodology, not on the conclusions that they generate."  *Id*. at 595.  Several factors which may be considered in determining the soundness of the scientific methodology include: (1) whether the theory or technique can be and has been tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error and the existence and maintenance of standards; and (4) whether the theory or technique used has been generally accepted.  *Id*. at 593-94.  These factors do not constitute a definitive checklist or test. *Kumho Tire*, U.S. at 144.  Instead, they compose a nonexclusive, flexible test to ascertain the validity or reliability of the methodology the expert employed.  *Id*.  The applicability of each factor depends on the particular facts of the case.  *Id*.

The second prong, whether the proposed testimony will assist the trier of fact to understand or determine a fact in issue, goes primarily to the issue of relevancy.  *Daubert,* 509, U.S. at 591.  *Daubert* described this examination as a question of whether expert testimony proferred in this case is sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute.  *Id*.  (citing *United States v. Downing*, 753 F.2d 1224, 1242 (3rd Cir. 1985)).  As noted in *Cunningham v. Bienfang*, 2002 WL 31553976 (N.D. Tex. Nov. 15, 2002), Federal Rule of Evidence 401 defines "relevant evidence" as that which has "any tendency to make the existence of any fact that is not of consequence to the determination of the action more probable or less probable than it would be without the evidence."

Therefore, expert testimony is not relevant, and thus inadmissible, if it is not helpful.  "Whether the situation is a proper one for the use of expert testimony is to be determined on the basis of assisting the trier."  *Peters v. Five Star Marine*, 898 F.2d 448, 450 (5th Cir. 1990).  The Court in *Peters* ruled that it is within the discretion of the trial judge to decide "that the [fact-finder] could adeptly assess the situation using only their common experience and knowledge," and thus exclude expert testimony on that basis.  If the expert's testimony brings no more to the finder of fact than the lawyers can offer in argument, the expert's opinions should be excluded.  *In Re Midland Enterprises, Inc.*, 2002 WL 31780156 at *3 (E.D. La. Dec. 11, 2002).

When expert testimony or reports are challenged under *Daubert*, the Court's role as gatekeeper does not replace the traditional adversary system, or the jury's place within the system.  *Scordill v. Louisville Ladder Group, L.L.C*., 2003 WL 22427981 at *3 (E.D. La. Oct. 24, 2003).  As the *Daubert* court noted, "vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."  *Daubert*, 509 U.S. at 596.  As a general rule,

questions relating to the basis and sources of an expert's opinion rather than its admissibility should be left for the jury's consideration. *United States v. 14.38 Acres of Land, More or Less S. in County, Miss.*, 80 F.3d 1074, 1077 (5th Cir. 1996)(citing *Viterbo v. Dow Chemical Co.*, 826 F.2d 420, 422 (5th Cir. 1987)).

Hartford argues that Manale and Wirth should not be permitted to testify as experts because there is no evidence that they have qualifications to speak on causation and lack a reliable methodology for evaluating damage. (Rec. Doc. 21-2, 6-7). To assess Manale and Wirth's expertise, the Court must determine whether the witnesses, because of specialized knowledge, skill, experience, training, or education in the relevant field, is qualified to express an opinion on the topic at issue. *Daubert*, 509, U.S. at 590. Manale's resume demonstrates that he is a licensed insurance adjuster in Florida and Texas, has been an estimator since 2006,[3] has performed inspection and repair with the U.S. Department of Housing and Urban Development ("HUD") and has worked in the construction industry. (Rec. Doc. 27-4). Wirth is a licensed contractor, was a lead home inspector for HUD, has built more than 150 homes, and is certified in Xactimate, the tool used to generate the damage estimates. (Rec. Doc. 27-2). Wirth's resume reflects knowledge and experience in inspection, and that he understands the construction industry and how houses are constructed. Both Manale and Wirth have the requisite knowledge and experience to testify to damage, repair and costs.

Hartford takes issue with Manale and Wirth's qualifications to discern the causation of the damage to Denley's property. Denley directed "Wirth to prepare a wind-only estimate, therefore, excluding damages that would have been caused by flood waters." (Rec. Doc. 29-3, 1). The Court agrees that Manale and Wirth's experience with building homes does not

---

[3] According to Denley, Manale has conducted approximately 700 inspections since Hurricane Katrina. (Rec. Doc. 27, 3).

necessarily mean they are qualified to ascertain the causation of damages.  In light of the continuance of the trial, Manale and Wirth shall be permitted to supplement their qualifications with more specific information that they claim allows them to reliably determine causation.

Manale and Wirth's methodology for determining damage was using the Xactimate tool, which Wirth is certified to use.  This tool is widely recognized and used in the insurance industry to estimate damage.  (Rec. Doc. 27, 5).  Using the Xactimate as an estimate tool, this methodology meets the soundness criteria.

The Court finds Manale and Wirth qualified to testify as experts as to the scope of damage to Denley's property.  As to causation, they must supplement their qualifications to demonstrate sufficient expertise before such testimony will be permitted.  Hartford's motion to exclude Manale and Wirth as experts is GRANTED IN PART and DENIED IN PART.

### III. Defendant's Motion to Exclude Expert Report

Federal Rule of Civil Procedure 12(a)(2)(B) governs expert reports.  In accordance with this Rule, an expert report must contain:

> i) a complete statement of all opinions the witness will express and the basis and reasons for them; ii) the data and other information considered by the witness in forming them; iii) any exhibits that will be used to summarize or support them; iv) the witness's qualifications including a list of all publications authored in the previous ten years; v) a list of all other cases in which, during the previous four years, the witnessed testified as an expert at trial or by deposition; and vi) a statement of the compensation to be paid for the study and testimony in the case.

Fed.R.Civ.P. 26(a)(2)(B).  According to the advisory committee's note, 26(a) expert reports must be "detailed and complete."  FED.R.CIV.P. 26 Advisory Committee Note; *see also Sierra Club v. Cedar Point Oil Co.*, 73 F.3d 546, 571 (5th Cir. 1996).  A complete report must include the substance of the testimony that an expert is expected to give on direct examination together with the reasons.  *Id.*; *Walsh v. McCain Foods Ltd.*, 81 F.3d 722, 727 (7th Cir. 1996).  Furthermore,

7

the report must be complete such that opposing counsel is not forced to depose an expert in order to avoid ambush at trial; moreover, the report must be sufficiently complete so as to shorten or decrease the need for expert depositions and thus to conserve resources. *Sylla-Sawdon v. Uniroyal Goodrich Tire Co.*, 516 U.S. 822 (1995). Essentially, expert reports must not be preliminary in nature. FED.R.CIV.P. 26 Advisory Committee Note; *Sierra Club*, 73 F.3d at 571. Also, expert reports must include "how" and "why" the expert reached a particular result, not merely the experts conclusory opinions. *Reed v. Binder*, 165 F.R.D. 424, 429 (D.N.J. 1996).

Hartford argues that the Elite report is based on erroneous facts (Rec. Doc. 21-2, 1). Hartford cites *Sigur v. Emerson Process Management*, where the court found that the expert's reliance on an untrue assumption, rendered the report irrelevant. 2007 WL 1893632 (M.D. La. April 25, 2007). In this case, Hartford proposes that the Elite report erroneously relies on the assumption that the attic vent blew off during the hurricane, whereby exposing the house to weather through that particular hole in the roof. (Rec. Doc. 21-2, 9). Denley has not claimed that the power attic vent is the sole or even the largest source of the damage[4] to the structures, neither is this alleged by Manale or Wirth. The report simply lists the attic vent as an item that requires replacement.

Furthermore, Hartford argues that because of its erroneous factual basis, the report is irrelevant and inadmissible. (Rec. Doc. 21, 1). Federal Rule of Evidence 401 defines relevant evidence as "that which has the tendency to make the existence of any fact that is of consequence as to the determination of the action more or less probable than it would be without the evidence." Fed.R.Evid. 401. The issues in this case are the determination of the extent and cost to repair or replace damage to Denley's property. Manale and Wirth were asked to record

---

[4] The attic vent is listed as one roof opening among the many, through which wind or wind-driven rain entered the house. (Rec. Doc. 27, 4). Denley, not Manale nor Wirth, listed under "Personal Property" damages, that art and fur coats located in the attic were damaged under the hole from where the vent was. (Rec. Doc. 29-3, 2).

8

damage above the 4.5 foot flood line of the house. (Rec. Doc. 29-3, 1). The report includes a detailed assessment of each room and clearly lists the purpose of the report as a record of the damage on both the first and twelfth pages. (Rec. Doc. 27-2, 1, 2).

The Elite report speaks directly to the issues of the extent of the damage and the cost of repair and replacement because it provides the trier of fact with evidence relating to damage and the costs associated with the damage. Whether some of the damage calculations were derived from an alleged erroneous fact may be raised at trial. The Court finds that the report is relevant as to damages and admissible.

However, the report is seriously flawed in that it does not set forth the basis for why and how Manale and Wirth conclude the damage was caused by wind from the hurricane. This is the key issue in the case and unless and until their report is supplemented to set forth those facts and also supplemented to justify finding them qualified to give such testimony as to causation, they may not so testify.

The motion to exclude the expert report is GRANTED IN PART and DENIED IN PART.

**IV. MOTION FOR SUMMARY JUDGMENT**

Summary judgment is only proper when the record indicates that there is not a "genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. A genuine issue of fact exists only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc*. 477 U.S. 242, 247-48 (1986); *see also Taita Chem. Co. v. Westlake Styrene Corp.*, 246 F.3d 377, 385 (5th Cir. 2001). When considering a motion for summary judgment, this Court "will review the facts drawing all inferences most favorable to the party opposing the motion." *Reid v. State Farm Mut. Auto Ins. Co.,* 784 F.2d 577, 578 (5th Cir. 1986). The party moving for summary judgment

bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its initial burden, however, "the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial." *Engstrom v. First Nat'l Bank of Eagle Lake*, 47 F.3d 1459, 1462 (5th Cir. 1995). In order to satisfy its burden, the non-moving party must put forth competent evidence and cannot rely on "unsubstantiated assertions" and "conclusory allegations." *See Hopper v. Frank*, 16 F.3d 92 (5th Cir. 1994); *Lujan v. Nat'l. Wildlife Fed'n.*, 497 U.S. 871, 871-73 (1990); *Donaghey v. Ocean Drilling & Exploration Co.,* 974 F.2d 646, 649 (5th Cir. 1992).

      Hartford argues that the Court must find that it is not liable for any damages from flooding and/or water arising from the levee breaches, citing to the Fifth Circuit's opinion in *In re: Katrina Breaches Litigation*, 495 F.3d 191, 222 (5th Cir. 2007) (holding that an exclusion for loss from "flood" such as that in the instant policy unambiguously precluded coverage for losses caused by flooding due to breached levees). Hartford also argues that the allegation in ¶ VII of Denley's complaint must be rejected because the VPL does not apply to the instant homeowner's policy, and even if it did, where there are two causes that contribute to a total loss of a home, the VPL will not apply. *See Chauvin v. State Farm Fire and Cas. Co.*, 450 F.Supp. 2d 660, 669 (E.D.La. 2006). Denley now acknowledges that the scope of the homeowner's policy does not include flooding. *See also Sher v. Lafayette Ins*. Co., -- So.2d --, 2008 WL 928486 (La. 2008), and further stipulates that her claim is not for the policy limits under the VPL. (Rec. Doc. 29 at 8). Accordingly, the Court finds that summary judgment should be granted with regard to these particular allegations. The Court does note, however, that Hartford's argument that the VPL

applies only to fire insurance policies, and not a policy such as the homeowner's policy at issue in this case, has been soundly rejected by courts in this district. *See, e.g., Caruso v. Allstate Ins. Co.*, 2007 WL 625830 (E.D.La. 2/26/07) (Vance, J.).

Hartford next argues that Denley's allegations, that winds from Hurricane Katrina blew the power vent off the roof causing a hole and allowing water to enter and destroy the ceilings, resulting in damage of $54,216.97 and $55,005 in loss to personal property, should fail because photographs taken on November 19, 2005 conclusively demonstrate that the vent was still intact and undamaged at that time. Hartford's argument presupposes that it is Denley's theory that this hole, and this hole alone, through which the alleged wind damage occurred. However, the petition no where specifies that the wind damage was caused solely as a result of this hole, and in her answers to interrogatories, Denley's claims that her "residence and several personal property items were destroyed by wind or from rain water intrusion through wind-created *openings*." (Rec. Doc. 20-10 at 4). Denley argues that water infiltrated through the attic vent, damaged seal tab shingles, displaced ridge tiles and temporary uplift of the roof decking. Denley points to evidence of wind damage in photographs taken by Hartford's adjuster on November 19, 2005, showing damaged ridge tiles through which water could have infiltrated, damaged shingles at various elevations, imbedded debris in the seal tab shingles, and broken windows above the flood line. (Rec. Doc. 29, Ex. C). Denley also argues that while the photographs show the vent in place at that time, they do not show that it was uncompromised.

The case cited by Hartford, *Southern Hotels*, in which the court determined that the plaintiff had failed to show a causal nexus between Hurricane Andrew and a loss of revenue to plaintiff's hotel, involved significantly more attenuated issues of causation than the relatively straightforward dispute here over whether physical damage above the flood line resulted from

11

Hurricane Katrina's winds. *Southern Hotels Ltd. Partnership v. Lloyds's Underwriters*, 1996 WL 592732 (E.D.La. 1996). Reviewing the facts and drawing all inferences most favorable to Denley here, the Court finds that a reasonable jury could conclude on evidence in the record that damage caused to her home and personal property was caused by wind and wind-driven rain. The Court acknowledges that some of Denley's claims may be weaker in light of the photographs that show the vent intact two months after the hurricane. But such concerns are to be appropriately raised, through cross-examination and contrary evidence, for the jury to ultimately determine at trial.

      Hartford argues that Denley is precluded from recovery because she breached conditions of the policy by her failure to protect the property from further damage and failure to give prompt notice of her damage claims. According to Hartford, Denley failed to protect her property from further damage as required by the policy because for more than two years after Katrina she allowed continuous water penetration to the dwelling by leaving windows and leaving an unsecured door at the rear entry open and not covering the hole left by the missing power attic vent. Additionally, she further breached the contract through her failure to give prompt notice of her claim to Hartford. Hartford relies in large part on the disputed estimate and inspection made in November of 2005. The Court notes that there is a dispute as to when that report was provided to Denley. Issues of mitigation of damages and whether plaintiff fulfilled her obligation to make "reasonable and necessary repairs" to the property (Rec. Doc. 20-4), depend in large part on the factual determination of when certain damages occurred, and what was reasonable under the circumstances. The Court finds that such fundamental disputed issues of fact are not appropriately determined by summary judgment.

Hartford next argues that summary judgment should be granted on all of Denley's claims because she has admitted that Hartford owes her nothing because she failed to timely respond to its December 6, 2007 requests for admissions, and no extensions of time were requested of the Court or granted.  Hartford's requests for admission include the following: 1) Admit that Hartford owes you nothing more for Additional Living Expenses and loss of use under the terms of the policy;  2) Admit that Hartford owes you nothing more for damage to personal property under the terms of the Policy;  3) Admit that Hartford owes you nothing more for damage to appurtenant structures under the terms of the Policy;  4) Admit that Hartford owes you nothing more for damage to the dwelling under the terms of the Policy;  5) Admit that the Residence Premises was not untenable due to damage caused by the direct force of wind from Hurricane Katrina.  (Rec. Doc. 20-12).  Denley responded denying the requests for admission on March 2, 2008.  *Id.*  In addition, on January 22, 2008, the plaintiff submitted her demand for $114,157.42 for losses under the policy for each type of damage addressed in the request for admissions.

Under FED.R.CIV.P 36(a)(3), a party must respond to a request for admission within 30 days of being served, or the matter will be deemed admitted.   The purpose of allowing requests for admission is not, like other discovery devices, to elicit facts and information or obtain production of documents, but rather to expedite trial by establishing certain material facts as true and thus narrowing the range of issues for trial.  *See* 7 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE ¶ 36.02[1], at 36-6 - 36-7 (3d ed. 2008); *American Auto. Ass'n v. AAA Legal Clinic*, 930 F.2d 1117, 1121 (5th Cir. 1991); *Coca-Cola Bottling Co. of Shreveport, Inc. v. Coca-Cola Co.*, 123 F.R.D. 97, 102 (D.Del. 1988).   While summary judgment may be granted based on admissions or deemed admissions, such a drastic remedy should receive special scrutiny from

13

the court. *See* MOORE'S, ¶ 36.03[4], at 36-19; *Printy v. Crotchet & Borel Serv.*, 196 F.R.D. 46 (E.D.Tex. 2000).

In the instant case Denley did respond to the requests, approximately two months late, and additionally submitted her demand for payment on January 22, 2008. This demand, made only about two weeks after her responses were due, at least answered the substance of the defendant's requests. A late response may be treated as an amendment to an admission, *see Chancellor v. City of Detroit*, 454 F.Supp.2d2d 645, 666-67 (E.D.Mich. 2006), and considered under the two-prong test under Rule 36(b). *Id.* On motion, and subject to Rule 16(e), a court may permit withdrawal or amendment if it would promote the presentation of the merits of the action and if the court is not persuaded that it would prejudice the requesting party in maintaining or defending the action on the merits. FED.R.CIV.P. 36(b). Notably, preparation of a summary judgment motion does not constitute prejudice under this test. *North La. Rehab. Ctr. Inc. v. United States*, 179 F.Supp.2d 658, 663 (W.D.La.2001)(finding that the necessity of having to convince the trier of fact of the truth of a matter erroneously admitted does not constitute sufficient prejudice). In this case, the specific requests for admission at issue, which essentially ask Denley to broadly admit that none of her claims have any merit, hardly seem to be calculated to narrow the actual disputed issues and expedite trial in any meaningful way. Although Denley has not moved for amendment, permitting amendment of the deemed admissions, particularly to such generic and unhelpful requests, would serve the presentation of the case on its merits. Likewise, especially in light of the demand Denley made on January 22, 2008, and again considering the nature of the requests at issue, it can hardly be argued that Hartford was prejudiced in presentation of its case. As a result, the drastic remedy of summary judgment is inappropriate. *See Printy*, 196 F.R.D. 46 (finding that extreme and drastic measure of summary

14

judgment was not justified and allowing withdrawal of plaintiff's default admissions even where counsel had failed to formally request permission to amend or withdraw them, because of the federal rules' direction to courts to construe all pleadings so as to do substantial justice) (citing FED.R.CIV.P. 8(f)).

The Court does note that it does not take failure to comply with the discovery rules lightly, and Denley has not raised any legitimate excuse for the failure to timely respond to the Hartford's requests for admissions. Moreover, Denley's counsel has never moved for amendment or leave to respond late, or attempted to explain the failure to timely respond. However, because of the lack of any perceivable prejudice to the defendant, and because Denley substantively answered the requests and made clear they were denied with the January demand, the Court does not find that sanction warranted here.

Finally, Hartford argues that Denley's extra-contractual claims under LA.R.S. 22:658 and 22:1220 must fail because it has established that no additional payments are due to Denley. Because Hartford's arguments here depend primarily on its other arguments, which the Court finds do not merit summary judgment, summary judgment on this ground is also not justified. Although Hartford raises arguments that suggest that Denley's success on her extra-contractual claims is unlikely, whether Hartford's actions were arbitrary and capricious is an issue for which there are genuine issues of fact that should be determined by the jury.

Accordingly,


IT IS ORDERED that the motion for summary judgment is GRANTED IN PART with respect to plaintiff's flood and VPL claims, and DENIED in all other respects.

IT IS FURTHER ORDERED that the motion to exclude the expert witnesses and the expert report is GRANTED IN PART and DENIED IN PART.

New Orleans, Louisiana, this 28th day of July, 2008.

_____
HELEN G. BERRIGAN
UNITED STATES DISTRICT JUDGE